UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **DR. MUTHONI IMUNGI,** | ) |
| *Plaintiff*, | ) |
| v. | ) Case No.: 3:22cv438 |
| **VIRGINIA COMMONWEALTH UNIVERSITY,** 907 Floyd Avenue Richmond, VA 23284, | ) ) ) JURY TRIAL DEMANDED |
| Serve: Jacob Belue, Esq. VCU Office of University Counsel 16 North Laurel St. Richmond, VA 23284, | ) |
| *Defendant*. | ) |

# COMPLAINT

Plaintiff Dr. Muthoni Imungi, by and through undersigned counsel, files this Civil Complaint and demand for jury trial against Defendant Virginia Commonwealth University ("VCU") for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16 ("Title VII") and the Virginia Human Rights Act, Va. Code Ann. § 2.2-3900 *et seq*. (VHRA), as amended by the Virginia Values Act.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

2. Jurisdiction is proper because Plaintiff has exhausted her administrative remedies.

3. The Court has supplemental jurisdiction over this action pursuant to the law of the Commonwealth of Virginia pursuant to the Virginia Human Rights Act, Va. Code Ann. § 2.2-

1

3900 *et seq*.

4. Venue lies in this Court pursuant to 28 U.S.C. § 1391 because the unlawful employment practices alleged in this action took place at VCU, where Plaintiff is employed, and in the Commonwealth of Virginia.

## PARTIES

5. Plaintiff is a resident of Richmond, Virginia, and has been employed by Defendant since August 2016.

6. Defendant is a Virginia state university located in Richmond, Virginia.

## ADMINISTRATIVE EXHAUSTION

7. On February 19, 2021, Dr. Imungi timely filed a charge of discrimination with the Equal Employment Opportunity Commission.

8. On March 24, 2022, Dr. Imungi received a notice of right to sue letter from the Equal Employment Opportunity Commission after administratively exhausting her claims.

## FACTS

9. Dr. Imungi was born and raised in Kenya and is Black.

10. Dr. Imungi began working at VCU's School of Social Work ("SSW") in or about August 2016 as its Director of Field Education ("DOFE").

11. Dr. Imungi was the SSW's only Black and foreign-born administrator while working as the DOFE.

12. When VCU hired Dr. Imungi her role as DOFE was meant to be purely administrative, and VCU advised her that she was not intended to teach any courses.

13. The SSW Dean who hired Dr. Imungi, Dr. Jim Hinterlong, resigned roughly two months after Dr. Imungi started working at VCU, and Dr. Tim Davy, who is white and

American, became SSW's Interim Dean.

14. While Dr. Davy was serving as Interim Dean, Dr. Imungi began enduring management challenges overseeing several of her subordinates. Despite these challenges, Dr. Imungi made significant changes to the SSW field education program, and one of her white subordinates opposed these proposed changes and complained to Dr. Davey about Dr. Imungi.

15. Dr. Hinterlong created the structure of the Office of Field Education where faculty field liaisons were supervised by the Director of Field Education. Soon after Dr. Davey assumed the role of Dean, some faculty field liaisons complained to him about being supervised by the Director of Field Education. The faculty field liaisons claimed that they wanted instead to be supervised by the Dean.

16. Dr. Davey did not yield to requests to change the supervisor for the faculty field liaisons, and he maintained an annual performance review and workload approval process that respected Dr. Imungi's role as the supervisor of faculty field liaisons and instructed Dr. Imungi's subordinates to address managerial concerns with Dr. Imungi directly before coming to him.

17. In or about July 2018, VCU announced that Dr. Beth Angell was hired as the SSW's new Dean. Dr. Angell is a white, American woman.

18. When Dr. Angell started her term at VCU, she was met with similar requests and complaints from some faculty field liaisons who wanted to be supervised by the Dean.

19. In or about 2018, Dr. Angell asked if she could assume the faculty field liaison annual performance reviews, and Dr. Imungi acquiesced because Dr. Angell had agreed with the faculty field liaisons' perspective. However, Dr. Imungi continued to write the faculty field liaisons' evaluations and shared them with Dr. Angell, who was unfamiliar with the faculty field liaisons' day-to-day operations.

20. Unlike Dr. Davey, Dr. Angell began to take Dr. Imungi's subordinates' complaints very seriously. Instead of directing Dr. Imungi's subordinates to address managerial concerns with her directly before escalating them to upper management, Dr. Angell welcomed the complaints and personally addressed them with Dr. Imungi.

21. In response Dr. Imungi in turn attempted to share her perspectives with Dr. Angell, Dr. Angell did not make herself available for Dr. Imungi's perspectives.

22. Thereafter Dr. Angell claimed that other faculty field liaisons were fearful when approaching Dr. Imungi, and during a meeting in or about fall 2019 Dr. Angell said to Dr. Imungi, "Why is it that I find myself anxious before my meetings with you?"

23. Dr. Angell was the VCU administrator in charge of giving Dr. Imungi's performance evaluation for the 2018/2019 school year. Dr. Angell gave Dr. Imungi a very positive overall rating because she had achieved all of the goals that she and Dr. Davey had set for this school year.

24. In or about fall 2019, Dr. Imungi reported her unhappiness with the way she was being treated at VCU with Dr. Angell during one of their monthly meetings, and Dr. Angell's response was to suggest Dr. Imungi resign.

25. Thereafter, in or about November 2019 Dr. Angell added additional goals to Dr. Imungi's 2019/2020 next performance evaluation even though she and Dr. Imungi had previously approved goals for the year and proposed changes to the goals even after approving them.

26. In or about February 2020, a SSW faculty member used a racial slur during a class session and a banner in the SSW stating, "Black History is American History" was vandalized.

27. In response, VCU's administration sent staff from its Office of Equity and Access (now called Office of Institutional Equity and Effectiveness) to hold an assembly faculty regarding concerns about racism and discrimination at the SSW.

28. Dr. Imungi reported publicly in this assembly about her negative experiences being the only Black person in VCU's SSW leadership and reported that she was not being treated the same as her white colleagues.

29. Following this assembly, on or about February 25, 2020, Dr. Angell emailed Dr. Imungi thanking her for her willingness to speak about her experiences and affirming her commitment to listening to Dr. Imungi and working to understand how she can support her and improve the SSW's climate, stating, "I am here to learn and to try to do better."

30. On or about March 8, 2020, Dr. Imungi submitted her 2019/2020 self-performance evaluation. In this evaluation, Dr. Imungi reported that Dr. Angell's diminishing of her leadership role over the past year severely compromised her ability to serve as DOFE and that her diminished role was due to her race. This was the first time that Dr. Imungi specially mentioned Dr. Angell as part of the VCU's executive leadership, as a discriminatory actor.

31. After this written admission, Dr. Angell and others excluded Dr. Imungi from meetings at the school, including those discussing diversity and inclusion.

32. On or about March 18, 2020, after receiving Dr. Imungi's self-review, Dr. Angell provided her with information on how to make a complaint of discrimination to Equity and Access Services.

33. On or about June 4, 2020, during Dr. Imungi's annual performance review meeting with Dr. Angell and Dr. Sarah K. Price (Associate Dean For Faculty Development), Dr. Angell informed Dr. Imungi that she was removing Dr. Imungi from the Director of Field

5

Education position purportedly because she was "not a good fit."

34. On or about June 30, 2020, VCU reassigned Dr. Imungi to a full-time teaching position. As a result of this reassignment, VCU stopped paying Dr. Imungi the $10,000 annual administrative supplement.

35. Following this reassignment, Dr. Angell assigned Dr. Imungi two new courses with six weeks' notice even though other faculty members who had been reassigned, had significantly more time (approximately a year) to prepare their courses.

36. Dr. Angell and the SSW subsequently worked very quickly to hire Stephanie Odera, a Black American woman, as the DOFE. Ordinarily, VCU would fill the DOFE position following an extensive nationwide search, and Odera's academic and field education experience is limited as compared to Dr. Imungi who holds a doctorate and 12 years of leadership experience. Moreover, there were several other vacant administrative and staff positions, and the DOFE position was filled much more quickly than any of the other positions.

37. Dr. Imungi drafted an appeal of this demotion and complained about race and national origin discrimination and retaliation to Equity and Access Services ("EAS"). EAS interviewed Dr. Imungi in or about fall 2020, but Dr. Angell indicated she would not be available for an interview until 2021 and also declined mediation offered through VCU's EAS.

38. Dr. Imungi filed a charge of race and national origin discrimination and retaliation in violation of Title VII with the EEOC on or about February 19, 2021.

39. Currently, Dr. Imungi works as a full-time professor in the SSW.

40. As a result of Defendant's violations of Title VII, Dr. Imungi has suffered and is continuing to suffer injuries, including, but not limited to, economic damages, mental anguish, damage to her career, and damage to her professional and personal reputation.

## COUNT I
## RACE AND NATIONAL ORIGIN DISCRIMINATION
### (Title VII)

41. Plaintiff adopts and incorporates by reference the averments of the preceding paragraphs as if fully set forth herein

42. Title VII, 42 U.S.C. § 2000e-2(a), makes it unlawful for an employer to discriminate against any individual with respect to her terms, conditions, or privileges of employment because of their race, color, or national origin.

43. Defendant unlawfully discriminated against Plaintiff on the basis of her race and national origin.

44. Defendant discriminated against Plaintiff based on her race and national origin when it allowed Dr. Angell to diminish her role as DOFE and treat her differently from white administrators.

45. Defendant further discriminated against Plaintiff when it took Plaintiff out of her administrative role as DOFE and replaced her with an American individual.

46. Any asserted reason for this mistreatment is illegitimate pretext for unlawful discrimination.

47. As a result of Defendant's violations of Title VII, Plaintiff has suffered and is continuing to suffer injuries, including, but not limited to, damage to her career, emotional distress, and damage to her professional and personal reputation.

## COUNT II
## RETALIATON
### (Title VII)

48. Plaintiff adopts and incorporates by reference the averments of the preceding paragraphs as if fully set forth herein.

7

49. Plaintiff engaged in protected activity when she complained about race discrimination.

50. Defendant unlawfully retaliated against Plaintiff.

51. As a result of Defendant's violations of Title VII, Plaintiff has suffered and is continuing to suffer injuries, including, but not limited to, damage to her career, emotional distress, and damage to her professional and personal reputation.

## COUNT III
### RACE AND NATIONAL ORIGINA DISCRIMINATION
**(Virginia Human Rights Act)**

52. Plaintiff adopts and incorporates by reference the averments of the proceeding paragraphs as if fully set forth herein.

53. At all relevant times herein, Va. Code Ann. § 2.2-3900 *et seq.* was in full force and effect.

54. Plaintiff is a member of a protected class – born and raised in Kenya and is Black – under the VHRA.

55. Defendant violated Va. Code Ann. § 2.2-3900 *et seq.* by allowing Dr. Angell to diminish Plaintiff's role as DOFE and treat her differently from white administrators.

56. Defendant also violated Va. Code Ann. § 2.2-3900 *et seq.* by taking Plaintiff out of her administrative role as DOFE and replaced her with an American individual.

57. The reasons for demoting Plaintiff are false and are pretest for unlawful discrimination.

58. Plaintiff has suffered substantial economic and mental anguish damages as a result of Defendant's unlawful actions, and she will continue to sustain damages in the future.

59. For Defendant's unlawful retaliation against Plaintiff, she is entitled to such legal

or equitable relief as will effectuate the purposes of the VHRA, including, but not limited to, reasonable attorneys' fees, compensatory damages, punitive damages, damages for humiliation and embarrassment, front and back pay, interest on all damages, equitable relief, consequential damages, any other relief that furthers the purpose of the VHRA, and any other relief that this Court deem just and equitable.

## COUNT IV
## RETALIATION
### (Virginia Human Rights Act)

60. Plaintiff adopts and incorporates by reference the averments of the proceeding paragraphs as if fully set forth herein.

61. At all relevant times herein, Va. Code Ann. § 2.2-3900 *et seq*. was in full force and effect.

62. Plaintiff engaged in protected activity when she complained about race discrimination.

63. Plaintiff suffered adverse action on or about June 30, 2022, when Defendant took Plaintiff out of her administrative role as DOFE and replaced her with an American individual.

64. Defendant unlawfully retaliated against Plaintiff when it demoted her.

65. Plaintiff has suffered substantial economic and mental anguish damages as a result of Defendant's unlawful actions, and she will continue to sustain damages in the future.

66. For Defendant's unlawful retaliation against Plaintiff, she is entitled to such legal or equitable relief as will effectuate the purposes of the VHRA, including, but not limited to, reasonable attorneys' fees, compensatory damages, punitive damages, damages for humiliation and embarrassment, front and back pay, interest on all damages, equitable relief, consequential damages, any other relief that furthers the purpose of the VHRA, and any other relief that this

Court deem just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Dr. Imungi respectfully requests that the Court issue a judgment granting her the following relief from Defendant:

I. Judgment against Defendant in an amount of any wages, salary, employment benefits, or other compensation denied or lost to Dr. Imungi, including economic damages, liquidated damages, reputational harm, and compensatory damages to be determined at trial;

II. Reinstatement, promotion, front pay, or other equitable relief;

III. Pre-judgment interest;

IV. Interest due on unpaid wages;

V. A reasonable attorney's fee and costs of this litigation

VI. Injunctive and declaratory relief;

VII. Reasonable expert witness fees; and

VIII. Any other relief that this Honorable Court deems just and proper to award.

## JURY DEMAND

Plaintiff demands a jury for all issues proper to be so tried.

Dated: June 15, 2022	Respectfully submitted,

	/s/ Anita M. Chambers
	R. Scott Oswald, Esq. (VA Bar No. 41770)
	Anita M. Chambers, Esq. (VA Bar No. 89067)
	The Employment Law Group, P.C.
	1717 K Street NW, Suite 1110
	Washington, D.C. 20006-5345
	(202) 261-2821 (telephone)
	(202) 261-2835 (facsimile)
	soswald@employmentlawgroup.com
	achambers@employmentlawgroup.com
	*Counsel for Plaintiff*