## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

MUTHONI IMUNGI,                          )
                                         )
      Plaintiff,                    )
                                         )
v.                                       )     Civil Action No. 3:22-cv-438–HEH
                                         )
VIRGINIA COMMONWEALTH                    )
UNIVERSITY,                              )
                                         )
      Defendant.                    )

### <u>MEMORANDUM OPINION</u>
### (Granting Defendant's Motion for Summary Judgment)

This case involves an employment dispute between Dr. Muthoni Imungi ("Plaintiff" or "Imungi") and Virginia Commonwealth University ("Defendant" or "VCU"). At issue is whether VCU discriminated and retaliated against Plaintiff, who was born and raised in Kenya and is Black, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16 ("Title VII").[1] (Compl. ¶¶ 9, 41–51.) Specifically, Plaintiff argues that VCU discriminated and retaliated against her when Dr. Beth Angell, a Caucasian American woman and VCU's Dean for the School of Social

---

[1] Plaintiff's Complaint also alleges discrimination and retaliation violations under the Virginia Human Rights Act ("VHRA"), as amended, Va. Code §§ 2.2-3900 *et seq.* (Counts III and IV, respectively). (Compl. at 1, ECF No. 1.) The Court previously granted Defendant's Motion to Dismiss Counts III and IV because the VHRA did not create a private right of action against employers with over 15 employees until July 1, 2020; the July 2020 amendments do not apply retroactively; and the alleged acts of discrimination and retaliation asserted by Plaintiff occurred on or before June 30, 2020. (Order, ECF No. 11.) Plaintiff consented to the dismissal and asked the Court to dismiss both counts without prejudice so that she may amend her Complaint. (Pl.'s Opp'n to Mot. to Dismiss at 1, ECF No. 8.) The Court did as such, however, Plaintiff never amended her Complaint.

Work ("SSW"), did not renew her supplemental administrative appointment as the Director of Field Education ("DOFE")—a one-year appointment which can be non-renewed at any time at the sole discretion of the Dean.  (*Id.* ¶¶ 33, 17, 40; Def.'s Mem. in Supp. ¶ 11, ECF No. 28.)

The case is presently before the Court on Defendant's Motion for Summary Judgment (the "Motion) pursuant to Federal Rule of Civil Procedure 56, filed on February 13, 2023.  (ECF No. 27.)  Both parties have submitted detailed memoranda supporting their respective positions, and the Court heard oral argument on April 24, 2023.  While the Court is ever mindful of the racial tension in America in recent years, for the reasons that follow, the Court will grant Defendant's Motion for Summary Judgment with prejudice.

## I. STANDARD OF REVIEW & BACKGROUND

At the outset, the Court notes that Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment includes numerous instances of disputed facts and nearly five pages of "Additional Facts."  (Pl.'s Opp'n Br. at 7–22, ECF No 31.[2])  Pursuant to Rule 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The relevant inquiry is "whether the evidence presents a sufficient

---

[2] Defendant's Memorandum in Support of its Motion for Summary Judgment (ECF No. 28) and Plaintiff's Brief in Opposition to that Motion (ECF No. 31) both contain a section of numbered paragraphs as to the facts, and then numbered pages for the legal arguments.  Accordingly, the Court cites to both specific numbered paragraphs as well as numbered pages in both documents, where applicable.

disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *Hogan v. Beaumont*, 779 F. App'x 164, 166 (4th Cir. 2019). A genuine issue concerning a material fact only arises when the evidence, viewed in the light most favorable to the nonmoving party, is sufficient to allow a reasonable trier of fact to return a verdict in the party's favor." *Anderson*, 477 U.S. at 248. Indeed, summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The presence of conclusory allegations or denials, without more, is insufficient to withstand a summary judgment motion. *See Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be

3

adequate." *Thompson Everett, Inc. v. Nat'l Cable Advert.*, 57 F.3d 1317, 1323 (4th Cir.

1995) (citing *Anderson*, 477 U.S. at 252); *see also Lewis v. City of Va. Beach Sheriff's*

*Off.*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (explaining that to defeat a summary

judgment motion, the nonmoving party must rely on more than "mere speculation," the

"building of one inference upon another," or the appearance of "some metaphysical

doubt" concerning a material fact). "[T]here must be 'sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party. If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Holland*

*v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007) (citing *Anderson*, 477 U.S. at

249–50). When applying the summary judgment standard, courts must construe the facts

in the light most favorable to the nonmoving party and may not make credibility

determinations or weigh the evidence. *See Holland*, 487 F.3d at 213.

The Court has concluded that the following factual recitation represents the

undisputed material facts for the purpose of resolving the Motion:

Plaintiff currently works at VCU as an Associate Professor in Teaching in the

SSW. (Offer Letter at 1, Ex. 9 to Mem. in Supp., ECF No. 28-9.) VCU originally hired

her as an Assistant Professor in Teaching in 2016, and she was promoted to the Associate

Professor position in 2018. (Letter to Provost Hackett, Ex. 12 to Pl.'s Opp'n Br. at 2,

ECF No. 31-12.) From August 2016 to June 2020, Plaintiff also held a supplemental

administrative appointment as DOFE, which came with a $10,000 administrative

supplement. (Offer Letter at 1.) The primary function of the DOFE role is to support the

mission of the SSW "by implementing, supervising, and assessing all functions of the

Office of Field Education ["OFE"] to include students' placement in and progress

through all field instruction courses, agency selection, assignment of students to clear

criteria, and monitoring of student progress[.]" (Mem. in Supp., which includes a

Statement of Undisputed Facts [hereinafter "SUMF"] ¶ 12.) The Dean of the SSW is

responsible for overseeing the workload and assignments of all faculty, including

academic administrators, such as the DOFE. (*Id.* ¶ 13.) Like all academic

administrators, the DOFE is responsible for supporting "the vision and discretion of the

Dean of the SSW." (*Id.*)

Supplemental academic administrative appointments—like the DOFE role—are

usually one-year terms. (*Id.* ¶ 11.) Administrative titles, such as the DOFE, can be

reassigned at any time, for any reason or no reason,[3] at the sole discretion of the Dean.

(*Id.*) The terms and conditions for such titles state:

> N. REASSIGNMENT. Nothing in these terms and conditions shall be construed to prohibit, at any time during the term of appointment or any subsequent appointments, the reassignment of an Academic Administrator to other duties, another position or combination of positions for which he/she is deemed by his/her manager to be qualified and which in the judgement of the university is consistent with the employee's education, training, background and experience.

(*Id.*)

Dr. Jim Hinterlong, the former SSW Dean who hired Plaintiff, resigned roughly

two months after Plaintiff started working at VCU, in October 2016. (*Id.* ¶ 15.) Dr.

Timothy Davey replaced Dr. Hinterlong and served as Interim Dean of the SSW for the

---

[3] To adhere to federal and state laws, VCU cannot, however, reassign an employee for discriminatory or retaliatory reasons. *See* Title VII; (Pl.'s Opp'n Br. ¶ 11.)

remainder of the 2016–17 academic year and the entire 2017–18 academic year. (*Id.*) In July 2018, VCU hired Dr. Angell as the permanent Dean of the SSW. (*Id.*)

Before Plaintiff began working at VCU, Dean Hinterlong hired approximately six faculty members to serve as Faculty Field Liaisons ("FFL"), and four identified as Black. (*Id.* ¶ 16.) There were five to seven FFLs in the OFE while Plaintiff served as DOFE. (*Id.*) Although FFLs had a dotted-line reporting relationship to the DOFE, they ultimately reported (and still report to) the Dean of the SSW. (*Id.* ¶ 17.) The SSW Dean has always been responsible for signing off on FFLs' annual performance reviews. (*Id.*)

In August 2016, Plaintiff held a meeting for OFE faculty and staff, announcing major changes in the job duties between administrative staff and FFLs. (*Id.* ¶ 18.) In 2017, Plaintiff received approval to hire an Associate Director for the OFE. (*Id.* ¶ 19.) She hired Cameron Carter, a Caucasian American woman, who previously served as an FFL. (*Id.*)

While serving as Interim Dean, Dr. Davey delegated the responsibility of writing annual performance reviews for FFLs to Plaintiff in her capacity as DOFE, however, he retained the final say on annual performance evaluations for all faculty members. (*Id.* ¶ 20.) Some FFLs complained to Dr. Davey about being supervised by Plaintiff and stated that they wished for the Dean—Dr. Davey—to supervise them instead of Plaintiff.[4] (*See*

---

[4] VCU states in its Memorandum in Support that "[n]early every FFL complained to Dr. Davey about Plaintiff's leadership." (SUMF ¶ 21 (citing to Depositions of Carter, Davey, and Plaintiff).) In her response brief, Plaintiff appears to deny this allegation. (Pl.'s Opp'n Br. ¶ 21.) However, in Plaintiff's Complaint, Plaintiff admitted that "[w]hile Dr. Davey was serving as Interim Dean, [Plaintiff] began enduring management challenges overseeing several of her subordinates" (Compl. ¶ 14), and that "some [FLLs] complained to [Dr. Davey] about being

*id.* ¶ 21; Compl. ¶ 15; Pl.'s Opp'n Br. ¶ 21.)

When Dr. Angell became Dean, FFLs again complained about Plaintiff and requested that the Dean—not Plaintiff—supervise them. (Pl.'s Opp'n Br. ¶ 22.) In 2018, Dr. Angell asked Plaintiff if Dr. Angell, herself, could assume the role of reviewing the FFLs' performance reviews, and Plaintiff "acquiesced" to her request. (Compl. ¶ 19.) While Dr. Angell assumed that role, Plaintiff continued to participate in the evaluation process by writing evaluation memoranda regarding FFLs' performance for Dr. Angell to consider. (SUMF ¶ 22; Compl. ¶ 19.)

The complaints that Dr. Angell received about Plaintiff caused Dr. Angell to "claim[] that other [FFLs] were fearful when approaching [Plaintiff.]" (Compl. ¶ 22.) In response to these complaints, Dr. Angell "tried to give [Plaintiff] general feedback about things she had heard." (Pl.'s Opp'n Br. ¶ 28.) In addition, Dr. Angell "follow[ed] up on [Plaintiff's] request for third party mediation" about disagreements regarding Plaintiff's role in an online Master's program. (Ex. 10 to Mem. in Supp. at 58, ECF No. 28-10; SUMF ¶ 29.)

Before Dr. Angell was Dean, Plaintiff received a favorable performance evaluation from Dr. Davey for the 2017–18 evaluation period. (Pl.'s Opp'n Br. ¶ 30.) Once Dr. Angell became Dean, she issued Plaintiff a favorable performance evaluation

---

supervised by [Plaintiff] . . . . [They] claimed that they wanted . . . to be supervised by the Dean" (Compl. ¶ 15). In considering the facts in the light most favorable to Plaintiff, the Court construes Plaintiff's original statement as to this point, as articulated in her Complaint, as true. Thus, the Court determines that "some" FFLs—not "nearly every [FFL]"—complained to Dr. Davey about Plaintiff.

for the 2018–19 evaluation period.  (2018–19 Review, Ex. 27 to Pl.'s Opp'n Br., ECF

No. 31-27.)  However, Dr. Angell only supervised Plaintiff for a portion of that

performance cycle.

Although Dr. Angell provided Plaintiff with a favorable evaluation overall for the

2018–19 period, Dr. Angell did express an "issue that [she] [has] noticed" regarding the

need for more effective communication between Plaintiff's office and the Office of

Academic Affairs.  (*Id.* at 2.)  Additionally, at least some of the 2018–19 evaluation was

based upon Plaintiff's self-assessment.  (*Id.* ("I will base my assessment of your

performance in this domain on the [self-study]."); *see also* Compl. ¶ 30 ("[Plaintiff]

submitted her 2019/2020 self-performance evaluation").)  In the performance evaluation,

Dr. Angell also stated, "[a]s we have discussed, there are some tensions apparent between

tight oversight of the OFE . . . I appreciate your efforts to provide more autonomy to the

field faculty this year per our discussions, and want to continue to find ways to help

encourage their professional development[.]"  (2018–19 Review at 4.)  Dr. Angell

included her future expectations for Plaintiff to guide the coming year.  (*Id.*)

In June 2019, Dr. Angell considered making changes to the DOFE position to

better align with her expectations and vision for the OFE.  (Pl.'s Opp'n Br. ¶ 31.)  "[T]he

reason was primarily because Dr. Angell's vision of the school of education did not align

with [Plaintiff's.]"  (*Id.*; *see also* SUMF ¶ 31.)  Dr. Angell began exploring available

options regarding Plaintiff's DOFE appointment, including not renewing Plaintiff's

appointment after the term expired in June 2020.  (SUMF ¶ 31.)  In July 2019, Dr. Angell

requested a copy of Plaintiff's appointment contract from the Human Resources department to understand the rules and regulations governing the non-renewal of Plaintiff's administrative appointment. (Ex. 10 to Mem. in Supp. at 40.) At that time, Dr. Angell had been at VCU for nearly one year and wanted to structure her administrative team to help achieve the goals she had for the SSW. (SUMF ¶ 31.) By this point, Dr. Angell already had concerns that Plaintiff would not agree with Dr. Angell's priorities for the OFE moving forward. (*Id.*)

Also in the summer of 2019, Plaintiff told Dr. Angell "that she wanted a different opportunity to grow in a different capacity." (Pl.'s Opp'n Br. ¶ 32.) Plaintiff's comments concerning her job dissatisfaction caused concern for Dr. Angell about having Plaintiff remain in her role as DOFE. (SUMF ¶ 32.) Unbeknownst to Dr. Angell, approximately six months prior, Plaintiff met with Dr. Davey to discuss her interest in transitioning out of her current role in the SSW and moving into central administration. (*Id.*) In the fall of 2019, without advising Dr. Angell or anyone at VCU, Plaintiff applied for an assistant deanship at Reynolds Community College. (*Id.* ¶ 33.)

At some point in the fall of 2019, Plaintiff proposed creating and leading a division of continuing education for the SSW. (*Id.* ¶ 34.) Roughly a month later, Dr. Angell explained to Plaintiff that the position Plaintiff proposed could not be created for various reasons, including financial. (*Id.*) As an alternative and in an attempt to find a position more in line with Plaintiff's aspirations, Dr. Angell "suggested that [Plaintiff] step down from her role as [DOFE]" and proposed "some duties" for Plaintiff to

complete before returning to being a "regular faculty member." (Pl.'s Opp'n Br. ¶ 34.)
Plaintiff rejected this proposal and decided to remain in her position as DOFE. (*See id.*)
While serving in that position, Plaintiff failed to complete numerous tasks assigned to
her, however, she maintains that this was because the tasks could not be completed in the
allotted timeframe. (SUMF ¶¶ 35–36; Pl.'s Opp'n Br. ¶ 35.)

In February 2020, an SSW faculty member used a racial slur during a class session
and a banner hanging in the SSW building which stated "Black History is American
History." was vandalized.[5] (Compl. ¶ 26.)  In response, VCU's administration sent staff
from its Office of Equity and Access Services ("EAS," now referred to as the Office of
Institutional Equity and Effectiveness) to hold an assembly for faculty regarding concerns
about racism and discrimination at the SSW. (*Id.* ¶ 27.)  At the assembly, Plaintiff
publicly spoke about her negative experiences being the only Black person in VCU's
SSW leadership and reported that she was not being treated the same as her Caucasian
colleagues. (*Id.* ¶ 28.)  Following the assembly, Dr. Angell emailed Plaintiff, thanking
Plaintiff for speaking about her experiences and reiterating that she was committed to
listening to Plaintiff and working on understanding how she can support Plaintiff and
improve the SSW climate. (*Id.* ¶ 29.)

On March 8, 2020, Plaintiff submitted a 13-page self-review of her performance

---

[5] Specifically, in a classroom during an educational exercise, a professor (not Dr. Angell) read
the "N-word" off a notecard that a student had written. (Angell Dep. at 286:5-287:12).  Plaintiff
was not in that classroom at the time, nor was that word directed at her. (*Id.*)  As to the banner,
an unidentified person, not Dr. Angell, crossed out the word "American" in the phrase "Black
History is American History." (*Id.*)

during the relevant period (March 15, 2019–March 15, 2020).  (SUMF ¶ 44; Ex. 23 to

Pl.'s Opp'n Br. at 14, ECF No 31-23.)  Therein, she stated that:

> In the past year, I have experienced a diminishing of my leadership role in
> field education, which has severely compromised my ability to serve as
> DOFE.  I recognize that I am the first DOFE that is a person of color at this
> School.  I feel that my diminished role is not because of the quality of my
> work but because of the color of my skin.

(Ex. 21 to Pl.'s Opp'n Br. at 14.)

On March 16, 2020, Dr. Angell reviewed Plaintiff's 13-page self-review.  (SUMF

¶ 45.)  In light of Plaintiff's terse and conclusory allegations related to "the color of [her]

skin," Dr. Angell immediately consulted with EAS on the appropriate way to respond.

(*Id.*)  On March 18, 2020, Dr. Angell met with Plaintiff to discuss Plaintiff's concerns

and provided Plaintiff with information on how to report her concerns to EAS for

investigation.  (*Id.*)

In mid-March of 2020, VCU closed in response to the COVID-19 pandemic.

(SUMF ¶ 37.)  During this period, Dr. Angell and Plaintiff had disagreements about

policy changes that needed to be made in response to the pandemic, and how such

changes should be communicated to students.  (*Id.*)  Plaintiff's continued inability to

demonstrate flexibility and unwillingness to collaborate with others further confirmed to

Dr. Angell that she needed a DOFE who better aligned with her vision for the SSW.  (*Id.*)

In April 2020, in response to ongoing complaints by Carter,[6] personally and on

behalf of other faculty and staff in the OFE, Dr. Angell asked Carter to put the concerns

---

[6] As stated previously, Carter served as the Associate Director of the OFE and worked directly
under Plaintiff's supervision.

in writing so Dr. Angell could have the information distilled in one location. (SUMF ¶ 38; Ex. 21 to Pl.'s Opp'n Br. at 1, ECF No. 28-21.)

On June 3, 2020, Dr. Angell issued Plaintiff her annual performance evaluation, covering the 2019–20 evaluation period. (SUMF ¶ 39.) Dr. Angell assigned Plaintiff a rating of 2.2/4, based upon the performance rubric Dr. Angell implemented upon arrival at VCU. (*Id.*) Dr. Angell's evaluation contains a detailed explanation for why she assigned Plaintiff this rating, including that "[i]n the two years since I have been Dean of the School, employees of the field office have repeatedly raised concerns regarding [Plaintiff's] performance as a manager." (Ex. 22 to Pl.'s Opp'n Br. at 4, ECF No. 33-22.) Dr. Angell included the following list of issues that DOFE employees brought to her attention:

- Employees have reported feeling micromanaged [by Plaintiff], for example, faculty assigned as administrators being reprimanded for arriving a few minutes late rather than allowing the flexibility and autonomy usually accorded to faculty.
- Major tasks given to [Plaintiff] . . . are delegated to others without adequate direction and support . . .
- Perception by team members that [Plaintiff] displays lack of openness to input . . . regarding strategic decisions and as a consequence, there is a declining sense of team cohesion.
- Perception that [Plaintiff] delays making key decisions or moving projects forward . . . .

(*Id.*)

On June 4, 2020, Dr. Angell met with Plaintiff to advise her that she would not renew Plaintiff's administrative appointment as DOFE for the 2020–21 academic year after Plaintiff's term expired on June 30, 2020. (SUMF ¶ 40.) Dr. Angell's decision was

not contingent upon a negative performance evaluation, however, Dr. Angell factored the many concerns noted in Plaintiff's evaluation into her eventual decision. (*Id.*) During the meeting, Dr. Angell advised Plaintiff that her decision was based upon the need for the DOFE to possess compatible goals and priorities with Dr. Angell regarding the OFE and SSW. (*Id.*) Dr. Angell told Plaintiff that Plaintiff was "not a good fit" for the position. (Compl. ¶ 33.) During this meeting, Dr. Angell advised Plaintiff that she was issued a renewed 12-month term faculty contract at the rank of Associate Professor in Teaching for the 2020–21 academic year. (*Id.*)

In mid-June of 2020, Dr. Angell asked Carter, a U.S.-born, Caucasian woman, to serve as the Interim DOFE until a full-time DOFE was hired. (SUMF ¶ 43.) Dr. Angell believed that Carter was a good fit for the temporary position because Carter had been the Assistant DOFE since 2017 and had knowledge of the OFE. (*Id.*) Carter had no interest in applying for the full-time DOFE role but agreed to serve as Interim DOFE until VCU found a replacement. (*Id.*) Dr. Angell "worked very quickly" to hire Stephanie Odera, an African American woman, married to a Kenyan, as the new DOFE. (Compl. ¶ 36; *id.*) Plaintiff contends that Dr. Angell hired Odera without conducting an "extensive nationwide search" and even though "Odera's academic and field education experience is limited as compared to [Plaintiff's]." (Compl. ¶ 36.)

On July 22, 2020—roughly six weeks after receiving notice of the non-renewal of her administrative appointment—Plaintiff filed a complaint of discrimination with EAS, maintaining that her performance rating and the non-renewal of her administrative

13

appointment were discriminatory and retaliatory. (SUMF ¶ 46.) In her complaint, she

appealed her annual evaluation and Dr. Angell's decision not to renew her DOFE

appointment. (*Id.*) She listed Dr. Angell as the Respondent. (*Id.*)

That fall, EAS followed up with Plaintiff regarding the status of its investigation.

(*Id.* ¶ 47.) On February 19, 2021, Plaintiff filed a Charge of Discrimination with the

Equal Employment Opportunity Commission ("EEOC"). (*Id.*) As a result, EAS

suspended its internal investigation. (*Id.*)

In response to the immediate Motion, Plaintiff provides nearly five pages of

"Additional Facts," whereby she attempts to provide concrete instances that showcase

discrimination and retaliation. (Pl.'s Opp'n Br. at 17–22.) For example, Plaintiff states

that she "was being treated different than her peers, who were not [B]lack, and she also

observed that, being African, she was treated different than her peers who were African

American." (*Id.* ¶ 54.) She maintains that she was "singled out." (*Id.* ¶ 57.) She also

explains that:

> Carter was racist to [Plaintiff] because together they made a decision, then
> [Carter] outwardly disagreed with the decision. Ultimately, if it was not the
> decision that she was disagreeing with and unhappy with, what else was she
> unhappy with other than [Plaintiff], who was Brown and African, and she did
> not think that [Plaintiff] knew what she was doing.

(*Id.* ¶ 59.) She contends that "[w]henever [Plaintiff] received complaints from Carter,

they always seemed to be about people of color. Carter would always complain [sic]

about people who were Black, and so [Plaintiff] felt that Carter's bias [sic] also applied to

her." (*Id.* ¶ 60.) Plaintiff notes that a former VCU employee, Abbie Kinnebrew, who

14

had complained about Plaintiff to Dr. Davey (Ex. 5 to Pl.'s Opp'n Br. at 17, ECF No. 31-5), "would rub her head every time [Plaintiff] spoke" (Pl.'s Opp'n Br. ¶ 62). Plaintiff also states that in Carter's several years working in the SSW, "Carter has never seen the Dean remove the [DOFE] from their position." (*Id.* ¶ 74.)

The only evidence Plaintiff raises to demonstrate that Dr. Angell discriminated against her based on her national origin was that she "believes that when Dr. Angell said [Plaintiff] has communication problems, she attributes it to her accent because [Plaintiff] speaks clearly, speaks concisely, does not stutter, [and] does not mince her words." (Imungi Dep., Ex. 7 to Mem. in Supp. at 80, ECF No. 28-7.)

## II. DISCUSSION

### A. Plaintiff's Discrimination Claim under Title VII (Count I)

#### 1. Legal Framework

Title VII prohibits employment discrimination based on race or national origin. 42 U.S.C. § 2000e-2(a)(1). A plaintiff can establish a Title VII claim for race or national origin discrimination in one of two ways: by providing direct evidence of discrimination or by adducing evidence to support a *prima facie* case of discrimination under the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As elaborated below, Plaintiff has produced neither.

#### 2. Analysis

"Direct evidence of discrimination is either direct evidence of a stated purpose to discriminate, or circumstantial evidence of sufficient probative force to raise a genuine

issue of material fact . . . [t]he plaintiff's 'own naked opinion, without more,' is not enough to establish a genuine issue of fact." *James v. City of Chesapeake*, 424 F. Supp. 2d 852, 856 (E.D. Va. 2005) (quoting *Demuren v. Old Dominion Univ.*, 33 F. Supp. 2d 469, 479 (E.D. Va. 1999)); *see Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (stating that direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision"). Plaintiff has not adduced direct evidence of race or national origin discrimination. Indeed, Plaintiff concedes that "[t]he instant case does not rely on direct evidence[.]" (Pl.'s Opp'n Br. at 23, 31.) In concluding that Plaintiff does not provide direct evidence of discrimination, the Court will next analyze whether she has established a *prima facie* case of discrimination.

Under the three-step *McDonnell Douglas* burden-shifting framework, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. 411 U.S. at 803. If the plaintiff meets this burden, the employer has an opportunity to present a legitimate, nondiscriminatory reason for taking the contested adverse employment action, which dissolves any inference of discrimination, unless the plaintiff can demonstrate the employer's proffered explanation was merely a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804; *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996). "The plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans*, 80 F.3d at 959 (citing *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). Based on the record

16

before the Court, Plaintiff has failed to satisfy her obligation.

To establish a *prima facie* case of disparate treatment, Plaintiff must adduce facts enabling the Court to conclude that it is more likely than not that VCU's failure to renew her supplemental administrative appointment as the DOFE was motivated by discrimination. *See Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). To establish a *prima facie* case of disparate treatment, Plaintiff must prove that: (1) she was a member of a protected class; (2) she experienced an adverse employment action; (3) at the time of the adverse action, she met VCU's legitimate expectations; and (4) similarly-situated employees were retained under similar circumstances.[7] *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd on other grounds*, 566 U.S. 30 (2012) (applying this standard where an employer decided not to renew an employee's term-position); *see also White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2014); *Terrill v. Chao*, 31 F. App'x 99, 100 (4th Cir. 2002). When analyzing the fourth factor, courts do not require plaintiffs to establish a similarly situated comparator to succeed on all discrimination claims. *See Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003). However, when a plaintiff's allegation—as is the case here—is based

---

[7] Plaintiff cites to caselaw which showcases a different yet similar standard. (Pl.'s Opp'n Br. at 31.) Specifically, Plaintiff maintains that she must show that "(1) she is a member of a protected class; (2) she was subject to an adverse employment action; and (3) there was an inference of unlawful discrimination or that she was treated differently than people outside the protected class." (*Id.* (citing *Burgoon v. Potter*, 369 F. Supp. 2d 789 (E.D. Va. 2005)).) The Court believes that the four-prong standard is applicable in the matter at hand. Nevertheless, Plaintiff cannot establish a *prima facie* case of disparate treatment under either standard because, as elaborated below, she cannot demonstrate facts to support the final prong regarding similarly situated employees.

17

"'completely upon a comparison to an employee from a non-protected class . . . the validity of [the plaintiff's] *prima facie* case depends on whether that comparator is indeed similarly situated.'" *Thomas v. City of Annapolis*, 851 F. App'x 341, 347 (4th Cir. 2021) (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)).

The Court agrees with Defendant that Plaintiff's discrimination claims fail as a matter of law because she cannot support the third and fourth prongs required to establish a *prima facie* case of race or national origin discrimination. As to the third prong, the record is clear that Plaintiff did not meet Dr. Angell's legitimate expectations for the role of DOFE. *See Hawkins v. PepsiCo.*, 203 F.3d 274, 280 (4th Cir. 2000) ("[I]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff") (quoting *Evans*, 80 F.3d at 960–61)).

For example, well before 2020, Dr. Angell received numerous complaints about Plaintiff from faculty and staff (*see* Compl. ¶ 2), expressed her concern regarding Plaintiff's inability to effectively communicate with others (2018–19 Review at 2), attempted to make changes to the DOFE position because her vision of the SSW did not align with Plaintiff's (SUMF ¶ 31), and expressed concerns that Plaintiff did not agree with her priorities for the OFE (*id.*). Then, in 2020, Plaintiff's continued inability to demonstrate flexibility and unwillingness to collaborate with others further confirmed to Dr. Angell that she needed a DOFE who better aligned with her vision for the SSW. (*Id.* ¶ 37.) In Plaintiff's 2019–20 performance evaluation, Dr. Angell noted that "[i]n the two years since I have been Dean of the School, employees of the field office have repeatedly

18

raised concerns regarding [Plaintiff's] performance as a manager." (Ex. 22 to Pl.'s Opp'n Br. at 4.) A Dean's needs and vision for a university are often esoteric and involve subjectivity. The Court is reluctant to impute discriminatory animus to VCU employers absent more compelling evidence than Plaintiff has offered. *See Hibschman v. Regents of Univ. of Md. Systems*, No. 98-1870, 2000 WL 323015, at *4 (Mar. 1, 2000).

Regarding the fourth prong, even if there were any doubt as to whether Plaintiff met Dr. Angell's legitimate expectations, Plaintiff's discrimination claims fail because she has not and cannot establish a valid comparator. A plaintiff must make more than a general statement that she was treated differently than members outside of her protected classes. *See Coleman*, 626 F.3d at 191. A plaintiff's *prima facie* case depends on showing that she is similarly situated "in all relevant respects to [a] comparator." *Haywood*, 387 F. App'x at 569. "Such a showing would include evidence . . . [that Plaintiff and the comparator were] subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (internal citations and quotations omitted).

In the matter at hand, Plaintiff only compares herself to Carter. (Pl.'s Opp'n Br. at 34.) However, unlike Plaintiff, Carter was never the DOFE. Carter merely served as Interim DOFE from the end of June 2020 until Dr. Angell hired Odera to replace Plaintiff as DOFE in October 2020. Moreover, Dr. Angell never had the opportunity to issue Carter a performance evaluation, nor was Carter ever eligible for renewal of the DOFE

position. The fact that Carter was never the permanent DOFE constitutes a differentiating circumstance that prevents Plaintiff from establishing Carter as a comparator, as is required. Furthermore, Plaintiff has not pointed to any evidence which demonstrates that Dr. Angell treated Carter more favorably than she did Plaintiff, which is fatal to her discrimination claims. Additionally, Plaintiff's discrimination claims also fail because VCU has articulated legitimate, non-discriminatory business reasons for not renewing Plaintiff's supplemental administrative appointment as DOFE, which Plaintiff cannot demonstrate were a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804; *Evans*, 80 F.3d at 959.

Plaintiff therefore cannot show any genuine issues of material fact with regard to her allegation of disparate treatment upon which a reasonable factfinder could base a ruling in her favor. Thus, the Court will grant Defendant's Motion for Summary Judgment as to Count I.

### B. Plaintiff's Retaliation Claim under Title VII (Count II)

#### 1. Legal Framework

To establish a *prima facie* case of retaliation, Plaintiff must prove that: (1) she engaged in protected activity; (2) she suffered a materially adverse action; and (3) VCU took the adverse action *because* of her protected activity. *Rayyan v. Va. Dep't of Transp.*, 719 F. App'x 198, 206 (4th Cir. 2018) (citing *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir. 2001); *see also Foster v. Univ. Md. E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015) (explaining that under the third prong of the *McDonnell Douglas* burden-

shifting framework, a plaintiff must prove that the employer's proffered reasons for the

contested action were false and "that retaliation was the real reason for the challenged

conduct"); *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (stating

that unlike discrimination plaintiffs, retaliation plaintiffs are limited to "traditional

principles of but-for causation" and must be able to prove that "the unlawful retaliation

would not have occurred in the absence of the alleged wrongful action or actions of the

employer.").

## 2. Analysis

Plaintiff attempts to rely on the alleged temporal proximity between the statements

she made at the assembly in February 2020 and provided in her March 8, 2020 self-

evaluation and the nonrenewal of her administrative appointment in June 2020. (Pl.'s

Opp'n Br. at 24–27.)  However, Plaintiff's retaliation claim fails because she admits that

Dr. Angell asked her to resign from the DOFE administrative appointment in the fall of

2019. (*Id.* ¶ 34.)  This admission alone eliminates any inference of retaliation based on

temporal proximity.  Furthermore, Plaintiff has not identified evidence of but-for

causation to rebut any of the legitimate, non-retaliatory business reasons that VCU has

provided to support Dr. Angell's decision not to renew Plaintiff's DOFE appointment

after it expired on June 30, 2020.  This inhibits Plaintiff from proving that VCU's

proffered explanation for Plaintiff's non-renewal was merely a pretext for discrimination.

*See McDonnell Douglas*, 411 U.S. at 804.

Simply stated, Plaintiff cannot demonstrate any genuine issues of material fact

21

with regard to retaliation, upon which a reasonable factfinder could base a finding in her favor.  Accordingly, the Court will therefore grant Defendant's Motion for Summary Judgment as to Count II.

### III.  CONCLUSION

The parties to this case have some history of conflict.  Plaintiff must realize, however, that unless she can demonstrate that she experienced an adverse employment decision that resulted from a protected characteristic, a case under Title VII will fail.  For the reasons stated on the record, and for those discussed above, the Court will grant Defendant's Motion for Summary Judgment with respect to all of Plaintiff's claims.

The Court further finds that any amendment and restructuring of Plaintiff's allegations would be futile based on the facts and circumstances of this case and will dismiss Plaintiff's Amended Complaint with prejudice.  *See Elrod v. Busch Ent. Corp.*, 479 F. App'x 550, 551 (4th Cir. 2012) (allowing trial courts to deny leave to amend a complaint if the complaint, as amended, would not withstand a motion to dismiss); *see also Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011).

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: May 19, 2023
Richmond, Virginia

22